### JACKSON v. GENZBERGER.
#### No. 660.

District Court, D. Montana.
Aug. 24, 1933.

J. J. Bourquin and J. F. Sullivan, both of Butte, Mont., for plaintiff.

H. L. Maury, of Butte, Mont., and H. R. Adair and H. S. Hepner, both of Helena, Mont., for defendant.

BOURQUIN, District Judge.

After verdict directed for plaintiff, defendant moved for a new trial. It appears

that in the matter of the estate of Wein, deceased, plaintiff was attorney for the executor in California. Some of the estate in Montana, plaintiff procured defendant to secure the appointment of one Hugo Kenck as administrator. Therein plaintiff and defendant joined as counsel, agreeing that fees would be equally divided. Defendant proceeded accordingly, and soon secured and divided as agreed $1500 fees.

Now developed a rift in the lute of harmony, and notes of discord. The executor and other relatives of deceased in California became dissatisfied with plaintiff, to which is evidence that Kenck and defendant some contributed, the upshot being plaintiff's discharge by the executor. Kenck, safely entrenched in the office plaintiff was instrumental in bestowing, took advantage of the opportunity to likewise discharge him with the cool assurance he had "no further use for your services." And defendant repudiated his agreement with plaintiff, welshed on his promise, secured and pocketed $8500. more of fees. This suit followed.

In Montana the estate was free from complications. Aside from usual formalities was only an action for about one-half of the estate, in behalf of the estate of the pre-deceased wife of Wein. Its incentive was that title to some of the estate was in the name of both husband and wife; and before issue joined settled for $2500, the fair inference is was of nuisance variety even as of value.

It is of interest that before plaintiff entrusted the proceedings to defendant, they agreed and Kenck with them, that no contract would be made with Kenck in respect to fees, but the latter would be left to the court; and for that they "understood" the courts of Montana were "very liberal" with other people's money in the matter of allowances to attorneys out of estates and other trusts by them administered. Defendant assured plaintiff that contrary to the California rule, they would thus receive double the administrator's statutory fees. And the device of extraordinary services to swell allowances was by them contemplated. The result vindicated the repute, forecast and strategy aforesaid, for whereas of the California estate fixed at $116,000 administered, the executor and his attorney each received $1980, of the Montana estate inventoried at $130,000, the administrator received $3660, and his attorneys, plaintiff and defendant, $10,000. Whether or not the latter inventory was inflated with an eye to fees, it is a fact that after fees upon that basis were secured, in due hearing in tax proceedings the court determined that the value of the estate in Montana was but $84000.

In support of his motion, defendant urges error in verdict directed for that (1) he was employed by Kenck, and (2) the court assumed plaintiff was a "runner" to secure business for defendant and so had earned the "commission." That is to say, the court sanctions a variety of so-called ambulance chasing.

■ In respect to the first point, defendant accepted the business and employment from plaintiff with authority to that end, to institute the proceedings and to endow Kenck with the office, before the latter had any authority and to employ defendant. In consideration thereof, defendant agreed to divide the compensation to be received. Now though Kenck once in office entrenched could discharge either or both counsel as he did plaintiff, he could not abrogate the agreement aforesaid and to which he was a stranger. The relationship between plaintiff and defendant was in the nature of a partnership, and like any partnership, its obligations are unaffected by any third person's refusal to recognize it, in this case unaffected by Kenck's refusal to longer recognize plaintiff as of counsel. Otherwise would be temptation and premium on greed and dishonesty, an incentive to conspiracy, of which is persuasive evidence herein, to defeat plaintiff's right to the share between him and defendant agreed.

In August 1929, Kenck upon the funds of the estate in his bank drew two checks $6500 and $1000, in favor of defendant for balance due of fees. Defendant promptly cashed the first, but the last was not cashed until the following November. In the mesne time, October, Kenck had presented his final account and petition for distribution, on oath before defendant made, alleging that said fees had been paid. Six months later, the proceedings ended in final decree for distribution. At the trial Kenck volunteered to "explain" why he drew two checks rather than one, but nothing further than that was as easy to draw one, and that he held the $1000 check for three months; that he had not delivered it at the time of his oath to the final account aforesaid. Asked for the reason, he gave none, but said "I did not receive the $1000. Do you see my indorsement on it?" He knew the inference, and was quick to volunteer the defense. Of course he knew, even if he assumed others would not, that to secure the money due on a check upon his own bank, a banker would need no more than the payee's endorsement; that thus any suspicion attaching to the banker's endorsement could be avoided.

The first point is no more than a miserable and transparent subterfuge, pretext and alibi, in hope to justify an act of dishonor, repudiation of an obligation and to one to whom defendant was much beholden. Whatever will to righteousness may be his, it yielded to greed; whatever sense of gratitude, to lust for gold. But he has high example. How clear it is to modern times do still apply these ancient lines,

"All sense of honor, men and nations, in decay,
Repudiation is the order of the day.
The idler and the wastrel of the thrifty make a prey;
Their substance beg and borrow, whine and welsh and not repay."

In respect to the second point, the insolence of the assertion is no less than the perfidy of the repudiation. And that it is not due to ignorance of the propriety of the relations between him and plaintiff, is evidenced by defendant's letter to plaintiff that "I should be delighted to join you in the proceedings as being of counsel. I have done this in the past." Having business abroad, both law and morals sanction counsel rather than go himself, to engage counsel there to attend it, the fees divided as they may agree. And he who accepts the benefit of the commission can not escape the burden of the obligation to fairly perform. If he does not, if he repudiates his contract, dissolves the partnership, embezzles his associate's share of the fees *thereafter* collected, not only may he be subject to action and constrained to account as here (though proceedings supplementary to execution have so far resulted in a waterhaul), but he may suffer the penalty sometime imposed upon those unfit to be enrolled in the great office of trust and confidence which is that of an attorney and counsellor at law.

In respect to that, further consideration may be deferred pending appeal.

New trial denied.